UNITED–BUCKINGHAM FREIGHT LINES, P. O. Box 2726–TA, Spokane, Washington 99220, Barber Transportation Co., P. O. Drawer 1431, Rapid City, South Dakota 57701, Ross Transfer, Inc., 345 Oak Street, Chadron, Nebraska 69337, Huston Truck Line, Inc., Friend, Nebraska 68359, Middlewest Motor Freight Bureau, Inc., 2539 Broadway, Kansas City, Missouri 64141, National Motor Freight Traffic Association, Inc., 1616 P Street, N.W., Washington, D. C. 20036, Plaintiffs,

v.

UNITED STATES of America and Interstate Commerce Commission, Defendants,

and

The Atchison, Topeka and Santa Fe Railway Company et al., Intervenors.

Civ. A. No. 1278L.

United States District Court
D. Nebraska.

Aug. 29, 1968.

George D. Michalson, Kansas City, Mo., Thomas M. Knebel, Washington, D. C., James E. Ryan, Lincoln, Neb., for plaintiffs.

Raymond M. Zimmett, Atty., I. C. C., Washington, D. C., Theodore L. Richling, U. S. Atty., Omaha, Neb., for defendants.

Harry B. Otis, Omaha, Neb., John C. Danielson, Asst. Gen. Counsel, Chicago and North Western Ry. Co., James W. Nisbet, Chicago, Ill., The Assn. of Western Railways, for intervening defendants.

Before LAY, Circuit Judge, and ROBINSON and VAN PELT, District Judges.

VAN PELT, District Judge.

This action seeks to set aside an order of Division 2 of the Interstate Commerce Commission (two members only participating) reversing the recommended report and order of the Examiner in an action entitled Atchison, Topeka & Santa Fe Railway Co., et al. v. Morris, et al., Docket 34492, and a later order denying the petition of plaintiffs herein for reconsideration. Venue for this proceeding and this court's jurisdiction over the parties is not disputed.

The case before the Commission was brought by a group of rail carriers pursuant to 49 U.S.C.A. § 316(e) charging that the more than eleven hundred motor carriers who participated in tariffs of either the Rocky Mountain Freight Bureau or the Middlewest Motor Freight Bureau, as well as four other carriers, including plaintiff Huston Truck Line, Inc., who maintained individual tariffs, were hauling clay and drilling mud from various origins in South Dakota and Wyoming to destinations in twelve states, including Nebraska, and all states bordering Nebraska and the states of Oklahoma, Texas, Wisconsin, Illinois and Indiana, at rates which were noncompensatory and thus unjust and unreasonable under 49 U.S. C.A. § 316(d).

As a practical matter, the case is primarily important to three railroads, the North Western, the Burlington, and the Milwaukee, as the chief and perhaps only originating railroad carriers and to the four plaintiffs herein as the chief originating motor carriers of the clay and mud. The other parties, except the tariff bureaus, are interested mainly by interlining or similar procedures. The argument disclosed that the rails carry approximately 90% of the traffic and the motor carriers approximately 10%.

The Examiner held a hearing pursuant to the so-called "modified procedure" of the Commission and in his recommended report and order concluded that the regional cost studies hereafter mentioned did not constitute prima facie evidence that the rates were noncompensatory.

He considered many other matters which bear upon a decision on the merits such as the fact that the actual weight of the return load is desirable rather than system average loads and the fact, as he viewed it, that the complaint was deficient.

The Examiner commented, notwithstanding the oral argument made to this court somewhat to the contrary, that the record showed the defendants, (plaintiffs here in some instances) "cooperat-

ed to the best of their ability to help the complainants" in respect to obtaining specific data concerning the specific costs of each, and says: "Their efforts were thwarted by the time limitations imposed by the Commission in the filing dates under the modified procedure. Neither does the record show that defendants unlawfully withheld data requested by the complainants." and notes at another point: "The complainants must have known several months prior to August 28, 1964 that they were going to file the complaint." This fact is important when we consider the request of plaintiffs herein for additional time, to May 23, 1965, to file a reply and statement which was objected to by counsel for the railroads and their claim of inability due to lack of time to show costs other than those of United-Buckingham, which were tendered and refused.

The Examiner recommended dismissal of the complaint. Following filing of exceptions to the Examiner's report, the two Commissioners comprising Division 2, reversed the Examiner and found the rates at issue "unjust and unreasonable to the extent that they are equal to or lower than defendants' out-of-pocket costs set forth * * *"

By order of this court, enforcement of the Commission order was restrained pending a hearing herein.

We reverse the Commission and return the case to it for a more complete hearing and findings.

■■■ We agree with the Commission that regional cost studies have been and can be used in determining whether the rates at issue are just and reasonable. We believe, however, that actual costs of the carriers, if ascertainable, are a better guide than regional costs. We believe in this case that the Examiner erroneously refused to permit plaintiffs to introduce the actual costs of United-Buckingham, probably on the theory that a prima facie case not having been established by the railroads, rebuttal evidence was not proper, and sup-

plemented by the notion that rebuttal should be confined to meeting matters brought out on cross-examination of the witness Halpine. Division 2 having now determined that a prima facie case had been developed, in fairness Division 2 should have seen that the "record is supplemented before it acts." The United-Buckingham evidence was available and by now costs should be available from all carriers.

■■■ We must consider here the effect of the Commission rules and the Administrative Procedure Act on this case and cases generally. All such rules and acts are for the purpose of doing justice between the parties. When the ultimate decision to be reached is best based on the costs of the carrier against whom complaint is made those costs, when available, should be considered. Without attempting to regulate the Commission's procedure beyond this case, we feel that the vehement objecting telegram of counsel for the railroads too greatly influenced the Commission and that adequate time should have been given United-Buckingham and others to obtain their cost data. The Examiner's comment that the complainants had had months to gather material before filing their complaints is not lightly brushed aside by a court which daily sees lawsuits and how they develop. To expect a defendant to meet evidence in a few weeks which the railroads had been months in gathering is unrealistic, especially when it involved cost studies. We believe that if this matter is again heard the railroads can now have more accurate evidence as to regional cost studies and the defendants, plaintiffs herein, can have their own completed cost studies.

■■■ We recognize the general rule that the Commission's judgment is entitled to great weight and that the wisdom of its decisions or their consistency are not within the field of our inquiry. This same court has many times relied on the authority so holding in affirming the Commission.

■ We recognize the scope of review as outlined in 5 U.S.C.A. § 706. This record, however, shows agency action "not in accordance with law" and "without observance of procedure required by law."

Here the Commission has relied on the establishment of a prima facie case, which its Examiner found had not been established. While permissible for the Commission to so hold, the evidence supporting the prima facie case is of a type that was not the most persuasive and was subject to being rebutted if actual costs had been available. United-Buckingham was denied the opportunity to present its actual costs by what amounted to an erroneous application of a procedural rule by the Examiner. It is manifestly unfair for the Commission to reverse the Examiner's report and decide the case on the record presented to the Examiner, which was obviously incomplete due to his ruling. We are not convinced that on a complete record showing the actual costs of the motor carriers who originate this traffic the Commission will hold these rates, which were subsequently increased, unreasonable.

Supplemental briefs in letter form were filed by the parties following the oral arguments herein. They are responsive to the court's inquiry as to Commission practice under the so-called "modified procedure."

The parties are not in agreement as to the proper practice. Probably the most significant and helpful statement in the briefs or letters is in the letter from the attorney for the Interstate Commerce Commission wherein he says: "As I acknowledged at the time of oral argument, the Commission's rules on this matter are not inflexible and can be administered liberally."

■ We agree with the Interstate Commerce Commission contention that the time comes when an administrative agency must be permitted to terminate its proceedings. We do not agree that it should terminate the proceeding by a decision and order on an issue as to which a party was denied the opportunity to introduce evidence.

■ Rules of procedure, whether modified or not, should never be used to defeat or even to modify justice. Commissioner Aitchison well stated the obligations of administrative agencies in a statement which should constantly be before examiners, divisions reviewing examiners' reports, and the full agency itself, when he said in part, as quoted in the three-judge opinion reported as Isbrandtsen Co. Inc. v. United States, D. C., 96 F.Supp. 883:

" 'They are not expected merely to call balls and strikes, or to weigh the evidence submitted by the parties and let the scales tip as they will. The agency does not do its duty when it merely decides upon a poor or nonrepresentative record. As the sole representative of the public, which is a third party in these proceedings, the agency owes the duty to investigate all the pertinent facts, and to see that they are adduced when the parties have not put them in * * *. The agency must always act upon the record made, and if that is not sufficient, it should see the record is supplemented before it acts. It must always preserve the elements of fair play, but it is not fair play for it to create an injustice, instead of remedying one, by omitting to inform itself and by acting ignorantly when intelligent action is possible * * *.' " (892)

As recently as 1965 the Court of Appeals for the Second Circuit in Scenic Hudson Preservation Conference v. Federal Power Commission, 354 F.2d 608, has cited *Isbrandtsen* as supporting the following statement: "The Commission must see to it that the record is complete. The Commission has an affirmative duty to inquire into and consider all relevant facts."

■ We feel it would be unjust to affirm the complained of order on the basis of the modified procedure rules when a liberal administration of the rules

would have permitted the reception of evidence on the basic issue to be decided.

 We do not pass on whether the Commission made improper adjustments to the regional costs. The Commission has wide discretion in applying its expertise. There may be no occasion following the next hearing to adjust regional costs. The actual costs may well decide this controversy.

The report and the two orders of the Interstate Commerce Commission in Docket 34492 dated February 21, 1966 and filed March 4, 1966, and dated August 1, 1967, are vacated and annulled and the case is returned to the Commission for a full hearing as to whether truck rates for hauling clay and drilling mud (complained of by the railroads) are non-compensatory and thus unjust and unreasonable under Section 216(d) of the ICC Act.